UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, DIVISION

ORVIE MIZZELL-BULLOCK

    Plaintiff,

v.                                                                      CASE NO.

SEMINOLE COUNTY PUBLIC SCHOOLS

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, the Plaintiff in and through the undersigned counsel to complain against Seminole County Public Schools for committing acts of discrimination in violation of her Civil Rights under 1866, Section 1981 and under the Equal Protection Clause of the of the 14th Amendment to the US Constitution.

**JURISDICTION**

1. The jurisdiction of this Court is based upon Article III to the United States Constitution. The Court's jurisdiction is also predicated upon Section 1981 of the Civil Rights Act of 1866, 42 USC 1981 and 42 USC 1983.

**VENUE**

2. Venue is proper in the Middle District of Orlando because all matters complained about herein occurred within the Middle District of Orlando.

**PARTIES**

3. The Plaintiff in this matter is Orvie Mizzell-Bullock. She was employed by the Defendant as an Assistant Principal at all times relevant to this complaint.

1

4. The Defendant in this matter is Seminole County Public Schools. The Defendant's main office is located in Sanford Florida.

## FACTUAL ALLEGATIONS

5. At all times relevant to this complaint the Plaintiff was employed as the Vice Principal of High School operated by the Defendant which is located in Sanford, Florida.

6. The Plaintiff's immediate supervisor was Dr. Connie Collins. Dr. Collins was the Senior Principal of the high school. As such, she was intimately aware of all of the actions taken by the Plaintiff in the performance of her duties.

7. The high school served a population of children that came from low and moderate income homes. To give this population of students a leg up financially to pay for their college education, the high school offered dual enrollment courses.

8. Dual Enrollment courses allows high school students to earn college credit while attending high school based classes.

9. The local state college, Seminole State College, provides the actual credit for the coursework completed. To facilitate this process the college requires that the instructors who teach the dual enrollment courses possess a certain level of post graduate education, typically a doctorate degree in the designated are subject area.

10. In July of 2016, the Plaintiff was asked by the school to submit her credentials to Seminole State College to see if she would be approved to serve as an instructor for one of the classes that the high school planned to offer at the high school. The Plaintiff possesses an earned Doctorate Degree. The teacher, Dr. Carolyn Taylor, that was originally designated to teach the course was rejected by the Seminole State College, because her Doctoral Degree was not in the same area as the subject matter being taught.

11. The Plaintiff agreed to step in so as to ensure that the students would not lose the opportunity to earn college credit.

12. The Plaintiff agreed to provide administrative oversight to the course while the originally designated teacher, Dr. Carolyn Taylor would handle the classroom portion. This arrangement was known by the principal, Dr. Collins, and it was approved by her. Seminole State College also provided the Plaintiff a stipend for the course. The Plaintiff did not agree to become the instructor of record because she wanted extra money. Rather, she agreed to perform the administrative oversight for the course because she was asked to do it for the benefit of the students. Resultantly, the students were able to earn college credit while attending high school.

13. This was not the first time that a highly credential administrator loaned his or her credentials to the high school so that the high school could provide college level coursework. In those instances, the administrator provided oversight for the course while another person actually taught the course. This was a fairly regular practice.

14. As a co-teacher, Dr. Mizzell provided the administrative overview for the program and she monitored the courses to ensure that they were being presented in a manner that was consistent with Seminole State College's requirements. She also prepared and submitted the necessary paperwork to Seminole State College regarding administrative matters. Principal Collins, Dr. Mizzell's direct supervisor, wrote a statement that is consistent with this explanation.

15. The Plaintiff expended countless hours ensuring that students were knowledgeable about the course, registered for the course, had good attendance, and were successful academically. Dr. Mizzell ensured that the co-teacher had appropriate resources for the course and

monitored the syllabus against the lesson plans to ensure that instructional objectives were being addressed. She also met with parents and students and monitored grades.

16. When the Plaintiff received her first payment from Seminole State College she contacted the college to ascertain whether the college had intended to pay her. She was told that the payment was proper and in order. The primary beneficiaries of the Dual Enrollment Program were the seventy-five (75) students who had the cost of their college education substantially reduced by receiving college courses while attending public high school because Dr. Mizzell filled this void and served as co-teacher/overseer of this course.

17. Withstanding the fact that the Plaintiff's actions were consistent with other school board employees, the Defendant initiated an investigation against the Plaintiff because she received compensation for the course and did not share it with the teacher who delivered the coursework in the classroom. However, all parties were aware of how the teaching arrangement would be handled prior to the commencement of the course. Seminole State College did not specify how the money was supposed to be allocated. Specifically, there was no requirement that the monies paid to the Plaintiff be distributed to any other person.

18. The Plaintiff was charged with fraud. Ultimately, the Defendant notified the Plaintiff that she would be terminated. However, in lieu of being terminated the Plaintiff agreed to tender her resignation.

## COUNT I DISCRIMINATION BASED UPON RACE IN VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866, 42 USC 1981 & 1983

19. The Plaintiff incorporates by reference as though fully stated herein the allegation contained within paragraphs 1-18.

20. The Plaintiff is in a protected class she is African American.

21. The Plaintiff was abundantly qualified to perform the duties of her job as an Assistant Principal of a high school.

22. The Plaintiff suffered an adverse employment action when she was terminated from her position as the Assistant Principal allegedly for fraud.

23. The Plaintiff did not commit a fraudulent act, but instead responded to the request of her superiors to meet a need, by lending her credentials to a dual enrollment course that was being offered at the high school. The Plaintiff was not the only person that has co-taught dual enrollment course. Other non-African American Administrators also co-taught in the same manner as the Plaintiff, but they were not accused of fraud nor where they terminated for doing something that they were asked to do and for doing something that benefted the students from the high school.

## COUNT II RETALIATION IN VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866, 42 USC 1981 & 1983

24. The Plaintiff incorporates the allegations contained in 1-18 as though they are fully stated herein.

25. The Plaintiff engaged in protected activity when she complained about what she believed to be discriminatory treatment based upon her race.

26. After she complained about being treated differently than her similarly situated colleagues she was terminated.

27. There is a causal nexus between the internal complaint that she made and the decision that the Defendant made to terminate the Plaintiff's employment.

### Demand For Relief

The Plaintiff is seeking all available relief provided for under the law which the court may deem appropriate to make her whole. The Plaintiff specifically seeks reinstatement to her

5

position as Assistant Principal with back pay and all accrued benefits that pertain thereto. In the alternative the Plaintiff seeks front pay if re-instatement is deemed impracticable. The Plaintiff further seeks compensation for emotional pain and mental anguish typically associated with being subjected to unlawful discrimination. Lastly the Plaintiff is seeking reasonable attorney fees and cost associated with commencing and maintaining this action.

s/ *Jerry Girley*
JERRY GIRLEY, ESQUIRE
FL. BAR # 0035771
THE GIRLEY LAW FIRM, PA
117 E. Marks Street, Suite A
Orlando, FL 32803
Tel: (407) 540-9866
Fax: (407) 540-9867
phyllis@thegirleylawfirm.com